UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE J. ARNOLD,

       Plaintiff,

v.                                                                            Case No. 1:04-CV-460
                                                                        Hon. David W. McKeague

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                     /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 16, 1951 and graduated from high school (AR 52, 72).[1] Plaintiff stated that he became disabled on July 16, 2001 (AR 52).

Plaintiff had previous employment as a carpenter (AR 86). He identified his disabling conditions as torn rotator cuff, back pain, neuropathy in the feet, and carpal tunnel syndrome, which resulted in the inability to lift more than 25 pounds, inability to reach, stretch or bend as needed, and throbbing feet and hands going numb (AR 66). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 25, 2003 (AR 18-30). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 29). Second, the ALJ found that he suffered from severe impairments of "degenerative disc disease of the lumbar spine with L4-5 herniation and spinal stenosis status post laminectomy and cage screw fixation and fusion at L4-5, a history of bilateral carpal tunnel syndrome with left release, and chronic pain syndrome with an adjustment disorder/mixed anxiety and depressed mood" (AR 29). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> for unskilled, light exertional level work not requiring more than occasional bending, twisting, stooping, kneeling, crouching, crawling and climbing, no work at heights, near hazardous machinery (due to medications [sic] side effects) and no more than occasional power gripping, and allowing for a need to alternate positions every thirty minutes. Light work is defined as work lifting 20 pounds occasionally and frequent lifting or carrying of objects weighing 10 pounds, standing and/or walking 6 of 8 hours, and sitting up to two hours in an eight hour work day with some pushing and pulling arm or leg controls

(AR 29). The ALJ further concluded that plaintiff was unable to perform his past relevant work as a carpenter (AR 29-30). The ALJ found plaintiff's and his wife's testimony regarding his inability to work was not wholly credible due to significant inconsistencies in the record as a whole (AR 29).

At the fifth step, the ALJ determined that an individual with plaintiff's limitations could perform 14,000 jobs in Michigan including manufacturing jobs in assembly, sorting, grading and packing (AR 30). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 30).

## III. ANALYSIS

Plaintiff raises four issues on appeal.

**A.   The ALJ did not properly assess the plaintiff's pain, depression and adverse effects from prescription medications.**

**B.   The ALJ did not properly assess the plaintiff's pain and limitation or his credibility.**

**1.   Disabling pain and credibility**

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting

5

42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987).  In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test  "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain."  *Id.*

**First prong of the *Duncan* test**

The ALJ found that plaintiff suffered from severe impairments of "degenerative disc disease of the lumbar spine with L4-5 herniation and spinal stenosis status post laminectomy and cage screw fixation and fusion at L4-5, a history of bilateral carpal tunnel syndrome with left release, and chronic pain syndrome with an adjustment disorder/mixed anxiety and depressed mood" (AR 29).  Plaintiff has presented objective evidence of an underlying medical condition. Accordingly, he has satisfied the first prong of the *Duncan* test.

### Second prong of the *Duncan* test

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of his pain. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. Records from the Northern Michigan Pain Specialists, P.C. from January through May 2003 indicate that plaintiff had muscle spasms in his back and shoulder (AR 285-91). However, an EMG study from July 2000 was normal (AR 24). Andrew Steiner, M.D., an independent medical expert (ME), testified that plaintiff had "some findings of painful response to sensory stimulation during examinations but otherwise no ongoing neurological loss in the form of strength loss or reflex loss" (AR 45, 336) The records contain no mention of muscle atrophy. While plaintiff's medical record includes some reliable indicators of intense pain, the record does not show consistent findings of these indicators.

Plaintiff points to the opinion of his family physician, John L. Diedrich, M.D. as supporting his claims. In a letter to plaintiff's attorney dated March 14, 2003, Dr. Diedrich stated:

> It is my opinion as an internal medicine doctor that [plaintiff] is disabled enough that his problems prevent any meaningful employment. I do believe, however, that more pertinent and specific medical opinions could be obtained from the multiple consultants and specialists who have seen him specifically for this problem.

(AR 255). The ALJ gave little weight to this opinion, stating that Dr. Diedrich provided no basis for his conclusions directly related to his assessment of plaintiff's medical condition; that the letter

was generated through attorney request in connection with an effort to generate evidence for the appeal to the ALJ; and that the determination of whether an individual meets the statutory definition of disability is reserved to the Commissioner (AR 26).

Although Dr. Diedrich was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled'). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ observed that plaintiff engaged in many daily activities: riding a bicycle, running errands, taking the dog for walks, exercising with his wife, woodworking in the garage (building shelves, birdhouses, picture frames and other unique items), vacuuming, riding his tractor, cooking, driving, shopping and swimming (AR 27, 216-19). Plaintiff stated that he gets together with his family "quite a bit" and plays cards and Scrabble, goes out to movies or dinner and watches football and hockey with his friends (AR 27, 218). Plaintiff also testified that he uses a snow blower for the front porch (AR 321). Although plaintiff alleges that he suffers from disabling pain, the record indicates that he participates in a number of daily activities. Such endeavors are not indicative of an invalid, incapable of performing sedentary types of work. *See Gist v. Secretary of Health and*

*Human Servs.*, 736 F.2d 352 (6th Cir. 1984)(capacity to perform daily activities on a regular basis will militate against a finding of disability).

In addition, plaintiff does not meet the second part of the second prong of the *Duncan* test because he provides no objective medical evidence indicating that his condition "is of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. The ALJ concluded that the objective treatment records are inconsistent with respect to the level of severity of plaintiff's medical condition, as well as the frequency, duration and intensity of his alleged symptoms (AR 25). The ALJ's conclusion is supported by the medical record. The ME testified that plaintiff had a diagnosis of spinal stenosis multi-level and past treatment of a multi-level laminectomy and fusion, and a carpal tunnel release in July 2001 with no documentation of any residual problems as a result of that procedure (AR 335-36). The ME described the "paucity of limiting physical objective findings" to support plaintiff's claims that he suffered from disabling low back and foot pain (AR 336). In addition, a neurosurgeon examined plaintiff in July 2001, and found that plaintiff's spinal canal was wide open and the fusion hardware appeared to be well-placed (AR 180). Such evidence does not support plaintiff's contention that his condition is so severe as to give rise to disabling pain.

The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

## 2. Credibility

Next, plaintiff contends that the ALJ committed error assessing his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). As the court discussed, *supra*, discrepancies exist between plaintiff's testimony and the other evidence in the record. Accordingly, the court has no basis to upset the ALJ's credibility findings.

## 3. Prescription medication

Plaintiff also contends that the ALJ failed to properly evaluate the adverse effects of his pain medication, primarily drowsiness. Plaintiff's contention is without merit. Allegations of a medication's side effects must be supported by objective medical evidence. *Farhat v. Secretary of Health and Human Servs.*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992). *See*, *e.g.*, *Bentley v. Commissoner of Social Security*, No. 00-6403, 2001 WL 1450803 at *1 (6th Cir. Nov. 6, 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Secretary of Health & Human Servs.*, No. 92-1632, 1993 WL 291301 at *7 (6th Cir. Aug. 2, 1993) (no objective medical evidence supported claimant's allegation that Tylenol 3 made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made

him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant).

Shortly before the administrative hearing, plaintiff complained to an examining psychiatrist, Kirk P. Swabash, D.O., of side effects from his medication including irritability, lack of energy, headaches, skin irritations and blurred vision (AR 262). At the hearing, plaintiff testified that his medications caused drowsiness (AR 325).  The ME testified that plaintiff's ability to concentrate is impaired to some extent by the medications, but he did not characterize this as an "extreme limitation" (AR 337-38).  For example, plaintiff reported that he continues to drive despite the drowsiness (AR 23).  The ALJ accepted plaintiff's claim that the pain medication makes him drowsy, but did not treat this as a work-preclusive impairment (AR 23, 27).  The ALJ took account of this side effect, by limiting plaintiff to unskilled work and no work at heights or near hazardous machinery (AR 27).  Accordingly, the ALJ did not commit error in assessing the side effects of plaintiff's medication.

**4.     Depression**

Next, plaintiff contends that the ALJ erred by giving little weight to the opinions expressed by his treating psychologist, John Grebe, Psy. D.  Plaintiff's Brief at 15.  A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.  However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528.

11

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2) (1997). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

As a general rule, the Commissioner gives more weight to a medical source that has examined a claimant than to the opinion of a source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). However, an ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

The non-examining State Agency psychological consultant concluded that plaintiff suffered from mild or no functional limitations (AR 224-39). The ALJ gave great weight to the State Agency psychological consultant's report because it relied on a psychological consultation performed

12

by William Michael, M.A. and Paul W. Sullivan, Ph.D., who examined plaintiff in a clinical setting (AR 22).[2] The ALJ found the Michael/Sullivan opinion to be consistent with the opinion of plaintiff's treating psychologist, James Marshall, M.A., L.L.P., who reported in February 2002 that plaintiff's symptoms of anger, depression and low self-esteem improved with therapy (AR 22, 168-69).

In reaching this determination, the ALJ felt that the opinions reached by the State Agency consultant was consistent with the overall record, while Dr. Grebe's opinion contained inconsistencies (AR 22, 216-22). Dr. Grebe stated that the focus of his therapy had been pain management of plaintiff's lower back, legs and feet (AR 254). In his March 3, 2003 letter, Dr. Grebe stated that plaintiff's pain inhibited his mobility, inhibited his ability to engage in prolonged activity, left him in more pain, left him more depressed, and impaired his overall quality of life (AR 26, 254). At the same time, Dr. Grebe reported that plaintiff's pain had remained at a "7" on a scale of 1 to 10 (AR 254). Then, in May 2003, Dr. Grebe's treatment notes reflect that plaintiff was attentive at group therapy, appeared to benefit from the therapy and was now stable (AR 26, 267). Plaintiff points out that the State Agency report (March 2002) pre-dated Dr. Grebe's report (March 2003). In this regard, the ALJ observed that plaintiff last attended individual therapy in 2002 and that by May 2003 plaintiff was benefitting from the group therapy and was stable (AR 26).

The ALJ was faced with conflicting evidence regarding plaintiff's condition. Since substantial evidence supported the ALJ's decision to give little weight to Dr. Grebe's opinion, it was not improper for the ALJ to discount that opinion.

---

[2] The ALJ refers to the Michael/Sullivan opinion as Exh. 13F, when in fact it is Exh. 8F (AR 22, 216-23).

   **C.**  **The ALJ failed to pose complete and accurate hypothetical questions that included the plaintiff's problems with concentration due to the effects of pain or side effects of medications.**

   **1.**  **Hypothetical question**

Next, plaintiff contends that the ALJ's hypothetical question posed to the vocational expert did not account for plaintiff's deficiencies of concentration and the side effects of his medication. The court disagrees. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be found through reliance on the testimony of a vocational expert in response to a hypothetical question posed by the ALJ, but only if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* Finally, a hypothetical question posed by the ALJ "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).

> The ALJ posed the following hypothetical question to the VE:
>
> He has a high school education and a work experience as you've just identified. He has a history of degenerative disc disease of the lumbar spine with past surgery, laminectomy and fusion, history of bilateral carpal tunnel syndrome, diagnosis of adjustment disorder with mixed features and takes medication which may result in side effects of drowsiness and problems with concentration such that in the first question I want you to assume that this individual would be limited to unskilled work because of the problems with the -- concentration. And would be limited to work involving lifting no more than 20 pounds occasionally or 10 pounds frequently, walking or standing up to six hours and sitting for up to two hours in an eight hour work day. Should not involve work at heights or which would involve exposure

>to hazardous machinery. Should not involve more than occasional
>power gripping. . . .

(AR 345). Given these restrictions, the VE testified that such an individual could perform 45,000 unskilled manufacturing jobs in Michigan (AR 345). The ALJ then added the restriction that the individual "would need to alternate between positions every 30 minutes" (AR 436). The VE testified that this additional restriction would reduce the available jobs to 14,000 (AR 346).

The hypothetical question accurately reflected plaintiff's work-related limitations caused by his deficiencies in concentration and side effects of medication. Unskilled work, by definition, incorporates some non-exertional components, consisting of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Such work involves simple and routine tasks. *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000). *See generally, Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (where ALJ found that claimant "often" suffered problems with concentration, limiting claimant to jobs that are routine and low stress and which do not involve intense interpersonal confrontations appropriately addressed that impairment). Accordingly, the ALJ's determination that plaintiff could perform 14,000 jobs is supported by substantial evidence.

### 2. Remand related to GAF score

Plaintiff also contends that this matter should be remanded for further vocational expert testimony because an examiner assigned him a Global Assessment of Functioning (GAF) score of 55. Plaintiff's Brief at 22-23.[3] This GAF scores lies within the 51 to 60 range, which

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological,

indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts

---

social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

with peers or co-workers)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.

The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *See also* Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings"). Accordingly, plaintiff's GAF score is not a ground for a remand.

> **D.    The medical evidence of record does not support the ALJ's determination that the plaintiff had the residual functional capacity to perform light work.**

Finally, plaintiff contends that he does not have the capacity to perform light work and "that the ALJ's determination that [plaintiff] could perform light work was made to avoid application of the Grid Rules that direct a finding of disabled for a residual functional capacity of sedentary work." Plaintiff's Brief at 16. The State Agency physician concluded that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds (AR 209). These exertional limits correspond to the physical exertional level for light work. *See* 20 C.F.R. 404.1567(b). An ALJ may rely on the opinions of the state agency physicians who reviewed plaintiff's file. *See* 20 C.F.R.

§ 404.1527(f)(2)(i). Accordingly, substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform light work.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Dated: July 5, 2005  /s/ Hugh W. Brenneman, Jr.
Hugh W. Brenneman, Jr.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).